UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, )<br>368 N. Main Ave. )<br>Tucson, AZ 85701, )<br> )<br>　　　Plaintiff, )<br> )<br>　　　　　vs. )<br> )<br> )<br>U.S. FISH AND WILDLIFE SERVICE, )<br>1849 C Street NW )<br>Washington, DC 20240, )<br> )<br>　　　and )<br> )<br>U.S. DEPARTMENT OF STATE, )<br>2201 C Street, NW )<br>Washington, DC 20522, )<br> )<br>　　　Defendants. )<br> )<br>_____ | Case No. 14-1527<br><br>COMPLAINT FOR DECLARATORY<br>AND INJUNCTIVE RELIEF |

INTRODUCTION

1.     Plaintiff Center for Biological Diversity ("Center") challenges the United States

Fish and Wildlife Service's ("FWS") and United States Department of State's ("DOS") improper

withholding of 10 records that are responsive to a request for information that the Center

submitted almost 10 months ago pursuant to the Freedom of Information Act, 5 U.S.C. § 552, *as*

*amended* ("FOIA").

2.     Specifically, the Center challenges FWS's and DOS's withholding of 10 records

that relate to the analysis of the impacts of the proposed Keystone XL Pipeline project

("Keystone XL") – a 1,200 mile-long, highly-controversial pipeline project that would transport

toxic material from the tar sands of Alberta, Canada to a terminal in Steel City, Nebraska – to

protected migratory birds and endangered and threatened wildlife, including the whooping crane,

black-footed ferret, interior least tern, piping plover, pallid sturgeon, American burying beetle, and western prairie fringed orchid.  The withheld records include: (1) a Migratory Bird Conservation Plan ("MBTA Conservation Plan"), which purportedly provides mitigation measures to offset the Keystone XL's detrimental impacts to bird species that are protected from "take" under the Migratory Bird Treaty Act, 16 U.S.C. §§ 703-712 ("MBTA"); (2) records of surveys for the affected species; (3) meeting summaries; and (4) communications that would reveal to the public – for the first time – the *specific* areas where the pipeline could result in severe impacts to some of North America's most imperiled wildlife.  FWS – the expert agency entrusted with administering the MBTA and the Endangered Species Act, 15 U.S.C. §§ 1531-1544 ("ESA") – relied on these records, which were generated by FWS and DOS (and/or their contractors), to assess and review Keystone XL's impacts to protected wildlife species, as required by the MBTA and the ESA, 16 U.S.C. § 1536(b)(3)(A).

3.      Instead of simply disclosing these records to the Center, on March 4, 2014, FWS referred its FOIA determination to DOS, resulting in the withholding of these records from the Center for nearly 10 months.  Yet, the Department of the Interior's implementing regulations for the FOIA require FWS to make a FOIA determination itself whenever, as here, the records are of primary interest to FWS, FWS is in a better position to assess whether the records are exempt from disclosure, or a FOIA determination by FWS is more efficient or practical.  43 C.F.R § 2.13(f).  FWS withheld and ultimately referred the MBTA Conservation Plan, surveys, and minutes and communications, even though FWS itself explicitly relied on these records to analyze the adverse effects of Keystone XL and assess how those impacts might be offset – e.g., under ESA section 7(a)(2), 16 U.S.C. § 1536(a)(2).

4.      FWS's referral of the FOIA determination as to these 10 records to DOS has left

the Center's FOIA request unresolved for several months with no response from DOS, which rarely produces records on any reasonable timeline.  Meanwhile, DOS has never shown any intent to control these records, either explicitly or implicitly, where such intent is another prerequisite to FWS's referral of the FOIA determination to DOS.

5.     As these 10 documents are fundamentally germane to FWS's own assessment of Keystone XL's impacts and are in FWS's possession and control, and where referral to DOS is neither efficient nor practical, the records are FWS agency records within the meaning of the FOIA.  On April 14, 2014, the Center appealed FWS's failure to comply with its obligation to make a timely determination in response to the Center's FOIA request.  FWS has failed to repsond to that appeal within 20 business days of receipt.  *Id.* § 552(a)(6)(A)(ii).  FWS's withholding of the records from the Center violates both the FOIA and the implementing regulations governing FOIA referrals, and the Court should order FWS to release them to Plaintiff immediately.

6.     The Center has also attempted to secure the records from DOS, without success. On July 23, 2014, the Center appealed DOS's failure to make a timely determination in response to the Center's FOIA referred request.  To date, DOS has failed to make the overdue FOIA determintion on these 10 records.  *Id.* §§ 552(a)(6)(A)(i) and (ii) (requiring an agency to make a FOIA determintion no more than 20 business days following an appeal of the agency's constructive denial of a request for records).

7.     Thus, the Center brings suit pursuant to the FOIA and seeks an order declaring DOS and FWS to be in violation of the FOIA, and injunctive relief compelling DOS and FWS to provide the records to Plaintiff without any further delay.  *Id.* §§ 552(a)(3)(A), (a)(4)(B).

## JURISDICTION AND VENUE

8.      Jurisdiction is proper in this court pursuant to 28 U.S.C. §§ 1331 and 1346, and 5 U.S.C. § 552(a)(4)(B), because this action arises under the FOIA and involves the United States as a defendant.  An actual, justiciable controversy exists between Plaintiff and Defendants.  The requested relief is proper under 28 U.S.C. §§ 2201-2202 and the Administrative Procedure Act, 5 U.S.C. §§ 705-706.  The challenged agency actions and/or inactions are subject to this Court's review under 5 U.S.C. §§ 702, 704, and 706.

9.      On April 14, 2014, pursuant to 5 U.S.C. §§ 552(a)(6)(A)(i) and 552(a)(6)(A)(ii), Plaintiff appealed FWS's referral to DOS of the determination on the 10 records that are being withheld from disclosure to the Center.  More than 20 working days have passed without a determination on Plaintiff's appeal to FWS.  FWS's failure to make a determination on Plaintiff's FOIA appeal within 20 working days serves as a constructive denial of the appeal.  5 U.S.C. § 552(a)(6)(A)(ii).

10.     On July 23, 2014, Plaintiff appealed DOS's failure to make a determination on Plaintiff's referred FOIA request.  To date, DOS has not made a determination on Plaintiff's request.  DOS's failure to make a determination on Plaintiff's FOIA request within 20 working days serves as a constructive denial of the request.  *Id.*

11.     Plaintiff has exhausted its administrative remedies with respect to its request.  *Id.* § 552(a)(6)(C)(i).

12.     Venue is proper in the District of Columbia pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e)(1), as the DOS and FWS headquarters are found within this district, a substantial part of the events giving rise to the claim occurred in the district, and no real property is involved in this action.

<u>PARTIES</u>

13.     Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a non-profit, 501(c)(3)

corporation that is dedicated to the preservation, protection, and restoration of biodiversity,

native species, and ecosystems.  The Center has offices in San Francisco, Joshua Tree, and Los

Angeles, California; Portland, Oregon; Silver Springs, New Mexico; Tucson and Flagstaff,

Arizona; Anchorage, Alaska; Richmond, Vermont; Seattle, Washington; Minneapolis and

Duluth, Minnesota; Las Vegas, Nevada; and Washington, D.C.  The Center works through

science, law, and policy to secure a future for all species, great or small, hovering on the brink of

extinction.  The Center has more than 50,000 members and 700,000 online supporters, and it is

actively involved in species and habitat protection issues throughout the United States and the

world.  The Center made the FOIA request in pursuit of its members' significant interest in

FWS's and DOS's analyses of Keystone XL's consequences for the nation's wildlife.  The

interests of the Center and its members are harmed by Defendants' withholding of records

related to Keystone XL and its negative impacts to protected species, and these injuries would be

redressed by a favorable decision granting the Center its requested relief.

14.     Defendant UNITED STATES FISH AND WILDLIFE SERVICE is the United

States federal agency from which the Center requested the MBTA Conservation Plan, surveys,

meeting summaries, consultations letters, and other records almost 10 months ago.  FWS is the

expert agency that is entrusted with administering both the MBTA and ESA, and in that capacity,

relied on the requested records in analyzing Keystone XL's detrimental effects to protected birds

and other species pursuant to these laws.

15.     Defendant UNITED STATES DEPARTMENT OF STATE is the United States

agency that is reviewing the proposed Keystone XL pipeline to determine, under Executive

Order 13337, whether it is in the national interest.  As part of this analysis, and to fulfill its

responsibilities pursuant to the ESA, DOS completed a Biological Assessment to which the 10

records at issue in this case are attached as appendices.

STATUTORY AND REGULATORY BACKGROUND

A.       The Freedom of Information Act

16.       The FOIA is a disclosure mandate that requires federal agencies to "make

promptly available" agency records that "any person" requests pursuant to the Act's procedures.

5 U.S.C. § 552(a)(3)(A).  After receiving a request for records under the FOIA, a federal agency

has 20 working days to determine whether to disclose the requested records and to notify the

requester of its determination.  *Id*. § 552(a)(6)(A)(i).

17.       If an agency fails to make a determination or respond to a FOIA request within 20

working days, the requester may deem its request constructively denied and file an appeal.  *Id.* §

552(a)(6)(C)(i).

18.       When an agency fails to make a determiation or respond to a with a FOIA appeal

within 20 working days, the requester "shall be deemed to have exhausted his administrative

remedies with respect to such request …. "  *Id.* § 552(a)(6)(C)(i).

19.       Federal courts can "enjoin the agency from withholding agency records" and

"order the production of any agency records improperly withheld from the complainant."  *Id.* §

552(a)(4)(B).

20.       In addition to providing declaratory and injunctive relief, a court may order

referral of the matter to the Special Counsel as warranted pursuant to the FOIA if it determines

there has been arbitrary or capricious agency action.  5 U.S.C. § 552(a)(4)(F).

21.       For a record to be considered an "agency record" within the meaning of the

FOIA, courts have determined that an agency must have "possession and control" of the record at the time of the request.  32 C.F.R. § 518.7(b).  A record is within an agency's "possession" when the agency either created or obtained it, and an agency has "control" of a record when the materials have come into the agency's possession in the legitimate conduct of its official duties.

22.     Where, as here, a party requests records from an agency that did not create them, the FOIA allows that agency to consult with the originating agency in determining whether to disclose the records to the requester.  5 U.S.C. § 552(a)(6)(B)(iii).

23.     While an agency may consult an originating agency when making a determination, it may only refer to the originating agency a determination altogether as to whether to disclose the records if doing so does not result in an improper withholding – *i.e.*, if the referral will not significantly impair the requester's ability to obtain the records or increase the amount of time that he or she must wait to obtain them.  Moreover, referral of the determination is only proper if the originating agency has shown an explicit intent to control the records, or has implicitly shown such intent in its creation and transfer of them.

B.     DOI's Regulations Governing Referrals of FOIA Determinations

24.     The Department of Interior ("DOI") has promulgated regulations that govern referrals of FOIA determinations by DOI agencies, including FWS.  These regulations provide that, "[i]f a bureau receives a request for records in its possession that it did not create" or for records that another bureau or a federal agency is "substantially concerned with," then it "may undertake consultations and/or referrals as described in [43 C.F.R.] § 2.13."  43 C.F.R. § 2.12(d).  DOI's regulations further provide that, "[i]f, while responding to a request, the bureau locates records that originated with another federal agency, it usually will refer the request and any responsive records to that other agency for a release determination and direct response."  *Id*. §

2.13(d).  However, the agency must nevertheless make the determination itself if the record is of its own primary interest, the agency is in a better position than the originating agency to make a FOIA determination, or it is more efficient or practical for it to do so.  *Id*. § 2.13(f).

FACTUAL BACKGROUND

A.      Keystone XL and Related FWS Reviews

25.      First proposed in 2008, Keystone XL would – if approved – run 1,200 miles from Alberta, Canada to Steele City, Nebraska.  If constructed, the pipeline would be operated by TransCanada Corporation and would transport heavy oil extracted from bitumen deposits, or tar sands, in Alberta, Canada to refineries in the United States.

26.      Keystone XL is highly controversial.  Environmental and other non-governmental organizations such as the Center, landowners, communities, Native American tribes, elected officials, experts, and scientists oppose the project due to the devastating environmental impacts it would have, among other reasons.

27.      On May 4, 2012, DOS began a "national interest determination" ("NID") process for Keystone XL, pursuant to Executive Order 13,337.  69 Fed. Reg. 25,299 (May 5, 2004) ("E.O. 13,337").  Under E.O. 13,337, DOS must, following public comment and review of Keystone XL's environmental impacts, decide whether to issue a permit allowing construction and operation of Keystone XL for 50 years.  To that end, DOS conducted a public comment period on the NID for Keystone XL from February 5, 2014 to March 7, 2014.

28.      In December 2012, DOS prepared a "biological assessment" ("BA") to consider Keystone XL's impacts to endangered and threatened species pursuant to the ESA.  This review relied on surveys and resulted in the creation of numerous other records, by FWS and DOS, including summaries of meetings between FWS and DOS, communications between the

agencies, and other related records.  DOS appended all of these records to its BA (collectively, "BA Appendices").

29.    However, although the records inform the agencies' analysis of impacts to endangered species, DOS has not made the BA Appendices available to the public.  Instead, they withheld them from public dissemination by simply claiming – without any elaboration – that they are "confidential."

30.    Because Keystone XL will "take" protected migratory birds – including bald and golden eagles, sandhill and whooping cranes, and many others – FWS and TransCanada – the Canadian corporation that wants to build and operate Keystone XL – developed the MBTA Conservation Plan.  Where the MBTA does not allow for the incidental take of covered birds, 16 U.S.C. § 703(a), TransCanada developed the MBTA Conservation Plan in an attempt to mitigate the significant, detrimental impacts to migratory birds and endangered species that would be caused by the construction and operation of the pipeline and its ancillary structures, such as hundreds of miles of new power lines that will present dozens of new collision hazards for cranes and perches for birds that prey on endangered interior least terns and piping plovers.  Despite the critical need for the public to review the plan to comment on Keystone XL, FWS withheld the MBTA Conservation Plan from public disclosure during comment periods on the project.

31.    Acting as the federal agency that is entrusted to administer the ESA and the MBTA, FWS relied on the BA Appendices and the MBTA Conservation Plan when considering whether to "concur" with DOS's conclusion that Keystone XL's impacts to endangered species are legally acceptable, due to specified mitigation measures like those contained in the planned MBTA Conservation Plan to offset the project's impacts.  16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. § 402.14(a).

32.     Hence, FWS utilized and relied on the BA Appendices and the MBTA Conservation Plan in the course of administering the ESA and MBTA in connection with Keystone XL.  The requested records therefore have been in FWS's control and posession and are of primary interest to FWS, and FWS is in a better position to make a FOIA determination and it would have been more efficient or practical for it to have done so than to refer the determination to DOS.  *See* 43 C.F.R. § 2.13(f).

33.     DOS also explicitly utilized and relied on the BA Appendices in its final environmental impact statement ("EIS") for Keystone XL, which was prepared pursuant to the National Environmental Policy Act, 42 U.S.C. § 4332(2)(C) ("NEPA").  In turn, the EIS was developed to inform DOS about Keystone XL's impacts for the decision of whether to issue a permit for the project.

34.     The public comment period for DOS's NID process ran from February 5, 2014 to March 7, 2014.  Hence, the deadline for comment was almost four months after the Center submitted its FOIA request to FWS.

B.     The Center's FOIA Request to FWS

35.     On November 13, 2013 the Center requested records from FWS that relate to FWS's analysis of the impacts of the proposed Keystone XL to protected species (hereinafter "FOIA Request").  The Center's FOIA Request sought records relating to ESA and MBTA compliance with respect to Keystone XL, including field surveys, environmental reports, studies, maps, GIS data, and spatial data.

36.     On November 19, 2013, FWS's FOIA Coordinator, Antoinette Urioste, acknowledged receipt of the Center's FOIA Request and assigned it a tracking number (FWS-2014-00161), making a determination as to whether to disclose the records due by December 18,

2013.

37.     After hearing nothing more from FWS for three months, on February 19, 2014, Lori Ann Burd, contract attorney at the Center, contacted Ms. Urioste via electronic mail ("e-mail") to inquire as to the status of the request.  Ms. Burd noted that the response time had been surpassed by two months, yet no responsive records had been provided.

38.     On February 21, 2014, Ms. Urioste replied that a partial FOIA response would be forthcoming.  She also stated that Ms. Burd's inquiry into the surveys had been forwarded "to the field" and that FWS was consulting with "an outside entity" on whether to release the MBTA Conservation Plan.

39.     On February 24, 2014, Ms. Burd telephoned and e-mailed Robert Harms of FWS's Grand Island, Nebraska field office.  Ms. Burd asked Mr. Harms to send her the BA Appendices and the MBTA Conservation Plan.  Mr. Harms informed Ms. Burd that he was in possession of the BA Appendices and MBTA Conservation Plan, but that he would have to await Ms. Urioste's determination of whether FWS would provide them to the Center.

40.     On February 26, 2014, Ms. Urioste informed Ms. Burd by e-mail that she was consulting with TransCanada about the requested records.  Later that day, Amy Atwood, an attorney at the Center, asked Ms. Urioste to reconsider, as consultation with TransCanada was improper, and – in light of the ongoing delay – asked Ms. Urioste to provide the records to the Center right away.  Ms. Urioste would not disclose the records to the Center.

41.     On March 4, 2014, Ms. Urioste sent a final FOIA determination and notice of referral.  The letter informed Ms. Burd that FWS had referred the determination as to whether to provide the Center with the BA Appendices and a draft version of the MBTA Conservation Plan to DOS.  In doing so, FWS withheld the records from disclosure to the Center under the FOIA,

which prevented the Center from obtaining the 10 records prior to the close of DOS's public comment period on Keystone XL for the NID process, which concluded on March 7, 2014.

42.     Because FWS withheld the records from the Center and then referred the FOIA determination to DOS, the Center's ability to comment on the NID determination for Keystone XL – *i.e.*, with a complete understanding of the project's impacts and the mitigation measures that the agencies considered to be sufficient to offset those impacts – was prejudiced.  Thus, the withholding prejudiced the Center's ability to comment on the NID process, and continues to prejudice the Center and its members' significant interest in scrutinizing the government's analyses of Keystone XL's consequences for the nation's wildlife.

43.     On April 14, 2014, Ms. Atwood timely appealed FWS's denial of the Center's request for the records.  To date, FWS has not responded substantively to the Center's appeal.

C.     The Center's Appeal to DOS

44.     On March 12, 2014, DOS's Kristi Browning informed Ms. Burd that DOS had received and processed the FOIA referral from FWS, assigning it tracking number F-2014-04132 and assigning it to FOIA coordinator David Van Valkenburg.  On March 13, 2014, Ms. Burd e-mailed Ms. Browning a link to the Biological Assessment where the nine appendices are referenced to ensure that DOS was aware of the specific documents that were being requested.

45.     On March 24, 2014, Mr. Van Valkenburg informed Ms. Burd that he had received electronic versions of the 10 documents.  Mr. Van Valkenburg informed Ms. Burd that the first document he reviewed contained physical locations for the greater sage-grouse.  As a result, Mr. Van Valkenburg sought Ms. Burd's permission to redact specific location information from the documents.

46.     The following day, March 25, 2014 the Center's Amy Atwood responded to Mr.

Van Valkenburg, asking for more information about what he was asking to withhold from disclosure and making clear that the Center would not agree to redaction of the very information that it was pursuing through its FOIA request.  In addition, Ms. Atwood pointed out that the Center had been seeking the records for several months, and that the delay had prejudiced the Center's ability to meaningfully participate in DOS's public NID process for the Keystone XL project.

47.     On April 4, 2014 Mr. Van Valkenburg e-mailed Ms. Burd, informing her that he was coordinating with other offices to get the information needed to answer Ms. Atwood's inquiries.

48.     Despite attempts to resolve the situation by contacting Mr. Van Valkeburg, DOS has provided no further response to date.

49.     On July 23, 2014, the Center appealed DOS's failure to comply with its obligation to make a timely determination in response to the Center's FOIA request.  DOS failed to respond to that appeal within 20 business days.  5 U.S.C. § 552(a)(6)(A)(ii).

50.     As of the date of this filing, almost 10 months have passed since the Center's initial request, six months have passed since FWS's Mr. Harms confirmed that he possessed the records at issue, and six months have passed since the record request was referred to DOS.  This delay has prejudiced, and continues to prejudice, the Center's ability to understand and educate the public on the effects of Keystone XL and provide fully informed comments on the decision of whether Keystone XL is in the national interest.

CLAIM FOR RELIEF

Violation of the Freedom of Information Act 5 U.S.C. §§ 552(a)(3)(A), 552(a)(4)(B): Failure to
Make a Timely Determination as to Agency Records Requested by Plaintiff Under the Act.

51.     Plaintiff re-alleges and incorporates by reference, as if fully set forth herein, each

and every allegation in the preceding paragraphs of this Complaint.

52.     Plaintiff requested agency records that are in the possession and control of FWS under FOIA.  FWS possesses these records and used them in analyzing Keystone XL's detrimental impacts to protected species.  Hence, these records are within FWS's control.

53.     FWS's withholding of these records from the Center is in violation of the FOIA's disclosure mandate and DOI's regulations governing referrals.  5 U.S.C. §§ 552(a)(3)(A) and (a)(6)(C)(i); 43 C.F.R. §§ 2.12 and 2.13.  FWS has failed to respond to the Center's appeal within 20 business days of receipt.  *Id*. § 552(a)(6)(A)(ii).

54.     DOS's failure to provide the requested documents in response to the referred FOIA request within 20 days is in violation of the FOIA.  5 U.S.C. §§ 552(a)(3)(A) and (a)(6)(A)(i). DOS has continued to fail to fulfill its statutory obligation to respond to the Center's appeal within 20 business days of receipt.  *Id*. § 552(a)(6)(A)(ii).

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.     Declare that FWS's referral of the determination as to the Center's request for the nine BA Appendices and the MBTA Conservation Plan violated DOI regulations;

B.     Enjoin FWS from any further reliance on invalid DOI regulations, 43 C.F.R. §§ 2.12 and 2.13, in future processing of FOIA requests;

C.     Declare that Defendants have improperly withheld the requested records in violation of the FOIA;

D.     Enjoin Defendants from any further withholding of the nine BA Appendices and the MBTA Conservation Plan, and order DOS and FWS to immediately provide the requested records to the Center immediately;

E.      Find that there has been arbitrary and capricious agency action and refer this

matter to the Special Counsel for Investigation, pursuant to 5 U.S.C. § 552(a)(4)(f);

F.      Award Plaintiff attorney's fees and costs; and

G.      Grant Plaintiff such other relief as the Court deems just and proper.


Dated: September 9, 2014                              Respectfully submitted,


                                                     */s/ Amy R. Atwood*
                                                     Amy R. Atwood, D.C. Bar No. 470258
                                                     CENTER FOR BIOLOGICAL DIVERSITY
                                                     P.O. Box 11374
                                                     Portland, OR 97211-0374
                                                     Tel: (971) 717-6401
                                                     Fax: (503) 283-5528
                                                     Email: atwood@biologicaldiversity.org


                                                     */s/ Jared M. Margolis*
                                                     Jared M. Margolis, VT Bar No. 4382
                                                     Application for admission *pro hac vice* pending
                                                     CENTER FOR BIOLOGICAL DIVERSITY
                                                     2852 Willamette St., P.O. Box 171
                                                     Eugene, OR 97405
                                                     Tel: (971) 717-6404
                                                     Fax: (503) 283-5528
                                                     Email: jmargolis@biologicaldiversity.org

                                                     *Attorneys for Plaintiff*